Minute Order Form (rev. 12/90)

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 00 C 470 | Date | May 31, 2001 |
| Case Title | Labor Ready v Williams Staffing, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]

(2) ☐ Brief in support of motion due _____

(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____

(4) ☐ ☐ Ruling / Hearing on _____ set for _____ at _____

(5) ✓ Status hearing ☐ held ☐ continued to ☐ set for ✓ re-set for 7/18/01 at 9:00

(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____

(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ✓ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendants' motion to dismiss counts 2,3,5,8,9,10,11 and 12 is denied. Defendants' motion to dismiss counts 1,6 and 7 is granted, without prejudice. Plaintiff is granted leave to file an amended complaint by 6/21/01. Defendants' response is due by 7/12/01.

(11) ✓ [For further detail see ☐ order on the reverse of ✓ order attached to the original minute order form.]

| | | | number of notices | |
|---|---|---|---|---|
| ☐ | No notices required, advised in open court. | | | |
| ☐ | No notices required. | | date docketed | |
| ✓ | Notices mailed by judge's staff. | ED-7 FILED FOR DOCKETING JUN -1 2001 01 JUN -1 AM 11:50 | | Documen |
| ☐ | Notified counsel by telephone. | | | |
| ☐ | Docketing to mail notices. | | docketing dpty. initials | 45 |
| ☐ | Mail AO 450 form. | | date mailed notice | |
| ☐ | Copy to judge/magistrate Judge. | | | |
| courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing dpty. initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LABOR READY, INC., a Washington )
corporation, and its wholly owned subsidiary, )
LABOR READY MIDWEST, INC., a )
Washington corporation )
 )
Plaintiffs, )
 ) Case No. 00 C 470
v. )
 ) Judge Robert W. Gettleman
WILLIAMS STAFFING, LLC, a Delaware )
limited liability corporation, d/b/a STAFFING ) Magistrate Judge Levin
NETWORK, INC., an Illinois corporation, )
ANTWAN K. PATTON, JOHN NARGAN, RAY ) **DOCKETED**
CASTRO, FRANK McCUMBER, and JAMES )
SCHLICKER, ) JUN - 1 2001
 )
Defendants. )

### MEMORANDUM OPINION AND ORDER

Labor Ready, Inc. and its wholly owned subsidiary, Labor Ready Midwest, Inc., both

Washington corporations (collectively, "plaintiff"), has brought a thirteen-count complaint

against defendants Williams Staffing, LLC, a Delaware corporation doing business as Staffing

Network, Inc., an Illinois corporation ("Staffing Network"), and the following the former

employees of plaintiff: Antwan Patton ("Patton"), John Nargan ("Nargan"), Ray Castro

("Castro"), Frank McCumber ("McCumber"), and James Schlicher ("Schlicher") (collectively,

"the the former employees").[1]

---

[1] With the exception of Schlicher, a resident of Michigan, each of the former employees are
residents of Illinois. The parties agree that the court has jurisdiction based on diversity of
citizenship and an amount in controversy exceeding $75,000, pursuant to 28 U.S.C. §1332(a)(1).

1

Plaintiff alleges the following claims against Staffing Network: tortious interference with contractual relations (Count I); tortious interference with prospective business relations (Count II); aiding and abetting breach of fiduciary duty (Count IV); misappropriation of trade secrets (Count V); unfair competition (Count VI); tortious interference with employment relationship (Count VII); and violation of the Uniform Deceptive Trade Practices Act (Count VIII). Plaintiff alleges the following claims against the former employees: breach of fiduciary duty (Count III); misappropriation of trade secrets (Count V); and breach of contract (Counts IX-XIII). Defendants have filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## FACTS

For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of plaintiff. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996). Plaintiff and Staffing Network do business in the competitive temporary manual labor staffing industry. Plaintiff operates in forty-six states, Puerto Rico, Canada, and the United Kingdom. The former employees signed comparable employment contracts with plaintiff that included nonsolicitation,[2] noncompetition,[3] and nondisclosure[4] restrictive covenants. Each contract states that it "shall be

---

[2] The nonsolicitation covenant states that for one year following termination, the former employees will not "[c]all upon, divert, influence or solicit or attempt to call, divert, influence or solicit any customer or customers" of plaintiff.

[3] The noncompetition covenant states that for one year following termination, the former employees will not "[o]wn, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of the same,

2

governed and construed in accordance with the laws of the State of Washington."

Plaintiff alleges that Staffing Network, a newer company to the temporary manual labor staffing business, hired the former employees, who were all management-level employees of plaintiff, and others who previously worked for plaintiff. Plaintiff claims that in their managerial positions, the former employees gained access to confidential information and trade secrets[5] that plaintiff had spent a "substantial amount of time and money" developing. Plaintiff asserts that it provides confidential information and trade secrets to its employees and agents only as

---

similar, or related line of business as that carried on now by [plaintiff] within a radius of ten . . . miles from [plaintiff's] office at which [each former employee] was last employed."

[4] One of the nondisclosure covenants states that the former employees "agree[] not to disclose any Confidential Information." Confidential information is defined in paragraph 11 as including:

> (a) The ideas, methods, techniques, formats, specifications, procedures, designs, systems, processes, data and software products which are unique to the Company; (b) All customer, marketing, pricing and financial information pertaining to the business of Company; (c) All operations, sales and training manuals; (d) All other information now in existence or later developed which is similar to the foregoing; (e) All information which is marked as confidential or explained to be confidential or which, by its nature is confidential.

There are various affirmative actions the former employees are to take to protect the confidential information. Also, another nondisclosure covenant says that for one year following termination, the former employees agree not to "[d]ivulge the names and addresses or any information concerning any customer" of plaintiff.

[5] According to plaintiff, its confidential information and trade secrets include its:

> [U]nique, confidential business practices, models and data; customer lists; the names of key individuals within the organization of customers and potential customers . . . ; customer[s'] habits[,] preferences[,] special needs[,] and requirements . . . ; recruiting [and] training methods; site selection [and] compensation models; dispatch office layouts; pricing data; computer software and hardware; formats; manuals; methods and techniques of operation and training; . . . personnel files . . . [;] and marketing strategies.

3

necessary, and that it takes various precautions, including the use of restrictive covenants, to protect the information from its competitors.

According to plaintiff, both during and after the time the former employees' worked for plaintiff, they attempted to recruit a number of plaintiff's other employees to work for Staffing Network. Staffing Network allegedly also had the former employees and other of plaintiff's employees steal or attempt to steal personnel files and other records from plaintiff. Additionally, plaintiff claims that Castro is employed three blocks from his former office in violation of the restrictive covenant's ten-mile radius work limitation. Other of the former employees—McCumber, Castro, and Patton—are accused of soliciting plaintiff's customers for the benefit of Staffing Network, either during or after their employment with plaintiff. Finally, plaintiff alleges that Patton disparaged plaintiff to plaintiff's customers in order to obtain those customers' business for Staffing Network. In sum, plaintiff alleges that Staffing Network induced the former employees to breach their employment contracts with plaintiff, that the breach of those contracts harmed plaintiff, and that Staffing Network and the former employees illegally used plaintiff's trade secrets to the benefit of Staffing Network.

## LEGAL STANDARDS

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Travel All Over the World, 73 F.3d at 1429-30. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to

4

decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

## DISCUSSION

### I. Enforceability of the Employment Contracts

Before the court can address defendants' arguments for dismissal of each of the

individual counts in the complaint, the court must first address defendants' contention that the

employment contracts between plaintiff and the former employees are overbroad and therefore

unenforceable. The parties dispute which state's law applies, however. Plaintiff notes that the

contracts dictate that Washington law governs; defendants argue that Illinois choice of law

analysis requires the court to apply Illinois law.

### A. Choice of Law Analysis—Contractual Provision

In diversity cases, the court applies the choice of law doctrines of the state in which the

court sits (in this case Illinois). See Echo, Inc. v. Whitson Co., 52 F.3d 702, 706 (7th Cir. 1995)

(citing Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941)). Under Illinois law, a court

will enforce a contractual choice of law provision unless the law to be applied is "repugnant to a

strong and fundamental policy of Illinois" or there is no relationship between the parties and the

state whose law is to be applied.[6] ISC-Bunker Ramo Corp. v. Altech, Inc., 765 F. Supp. 1310,

1335 (N.D. Ill. 1990); Curtis 1000, Inc. v. Seuss, 843 F. Supp. 441, 445 (C.D. Ill. 1994) (citing

---

[6] Other courts have followed a slightly different test. See WTM, Inc. v. Hennek, 125 F. Supp. 2d
864 (N.D. Ill. 2000) (stating that "an express contractual choice-of-law provision will be
enforced unless it (1) violates the fundamental public policy of Illinois and (2) Illinois has a
'materially greater interest' in the litigation than the chosen state") (citing Maher & Assocs., Inc.
v. Quality Cabinets, 640 N.E.2d 1000, 1006 (Ill. App. Ct. 2nd Dist. 1994)). The court need not
determine whether Illinois has a "materially greater interest" in this litigation, however, because,
as explained below, the court finds that the contractual choice of law provision in the instant case
does not violate the fundamental public policy of Illinois.

5

<u>Potomac Leasing Co. v. Chuck's Pub, Inc.</u>, 509 N.E.2d 751 (Ill. App. Ct. 2d Dist. 1987)).  The latter exception does not apply in the instant case because plaintiff is a Washington corporation, indicating that there is a relationship between the parties and Washington law.  See <u>ISC-Bunker Ramo</u>, 765 F. Supp. at 1315.  Thus, the court must now consider whether Washington law is so repugnant to a strong Illinois public policy that the court should not honor the choice of law provision in the employment contracts.

Defendants argue that Washington law is repugnant to Illinois public policy because Washington law employs a more liberal level of scrutiny to restrictive covenants than Illinois law.  It is true that Illinois law disfavors private covenants restraining trade, and as a result Illinois courts carefully scrutinize such provisions to ensure that they are reasonable and not contrary to public policy.  See <u>Peterson-Jorwic Group, Inc. v. Pecora</u>, 586 N.E.2d 676, 677 (Ill. App. Ct. 1st Dist. 1991).  Washington courts take the same approach, however.  See <u>Sheppard v. Blackstock Lumber Co.</u>, 540 P.2d 1373, 1375-76 (Wash. 1975) (recognizing that covenants that partially restrain trade are valid only if reasonable); <u>Wood v. May</u>, 438 P.2d 587 (Wash. 1968) (addressing whether restrictive covenant is void due to public policy concerns).

Further, both Illinois and Washington courts consider the same factors when determining the enforceability of a restrictive covenant.  They consider its reasonableness, using such factors as area, time, scope, and the effects on the covenantee and the public.  See, e.g., <u>ISC—Bunker Ramo</u>, 765 F. Supp. at 1315, 1335-36; <u>Lawrence & Allen v. Cambridge Human Resource Group</u>, 685 N.E.2d 434, 441 (Ill. App. Ct. 2d Dist. 1997); <u>Perry v. Moran</u>, 748 P.2d 224 (Wash. 1987) (considering area and time restrictions as well as scope), <u>modified on other grounds</u>, 766 P.2d 1096 (Wash. 1989) (altering determination of the reasonableness of liquidated damages); <u>Wood</u>,

6

438 P.2d at 589 (considering effect on covenantee, public, and employer); <u>Lehrer v. Washington, Dept. of Social 7 Health Servs.</u>, 5 P.3d 722, 725 (Wash. App. Ct. Div. 3 2000) (applying <u>Perry</u> factors).

Also, both Illinois and Washington courts will, under some circumstances, modify a fair restrictive covenant to the extent it is overbroad—though Washington courts may do so more willingly than Illinois courts. <u>Compare, e.g.</u>, <u>House of Vision, Inc. v. Hiyane</u>, 225 N.E.2d 21, 25 (Ill. 1967) ("[W]hile we do not hold that a court of equity may never modify the restraints embodied in a restraint . . . and enforce them as modified, the fairness of the restraint initially imposed is a relevant consideration to a court of equity."), <u>cited in</u> <u>Eichmann v. National Hosp. & Health Care Servs.</u>, 719 N.E.2d 1141, 1149 (Ill. App. Ct. 1st Dist. 1999), <u>with</u> <u>Sheppard</u>, 540 P.2d at 1377 (stating that restrictive covenants that are reasonable and lawful are enforced in full and allowing modifications so long as doing so does not bring "injury to the public [or] . . . injustice to the parties").

Defendants argue that Washington law is repugnant to Illinois public policy because the laws of the two states could produce different outcomes in the instant case with regard to the enforceability of specific provisions in the restrictive covenants. Even if defendants were correct, the Seventh Circuit has held that that fact alone does not carry the day. <u>Vencor, Inc. v. Webb</u>, 33 F.3d 840, 844-45 (7th Cir. 1994) (noting that even if Illinois law dictates a different outcome on a particular question than the law of the state designated applicable by the employment contract, that difference does not require the court to find the other state's law "so odious that a court will not respect the parties' election to be governed by" it). Further, Illinois courts have held that "a court should not refuse to apply the law of a foreign state, however

7

unlike its own, unless it is contrary to pure morals and abstract justice, or unless the enforcement would be of evil example and harmful to its people." Potomac Leasing, 509 N.E.2d at 754.

Thus, although there may be slight differences between the approach of Illinois courts and Washington courts regarding restrictive covenants, and even if those differences are outcome determinative with regard to specific provisions, the court finds that Washington law is not so repugnant to a strong and fundamental policy of Illinois that the court cannot abide by the parties' contractual choice of law provision. This finding is shared by Judge Marovich, who held: "Washington law concerning the enforcement of a confidentiality and restrictive covenant, although not identical to Illinois law, is entitled to be enforced under Illinois conflicts of law principles. Washington law is not repugnant to a fundamental policy of Illinois." ISC—Bunker Ramo, 765 F. Supp. at 1335-36 (citation omitted). Thus, the court will apply Washington law to determine whether the employment contracts are enforceable.

## B. Defendants' Contentions that the Employment Contracts are Unenforceable

Defendants argue that the restrictive covenants are overbroad and therefore unenforceable because they contain unreasonable time, geographic, and scope limitations, and also because of their effect on the former employees and the public.

In determining the validity of the restrictive covenants under Washington law, the court considers whether the restrictions: (1) are necessary for the protection of plaintiff's business and goodwill; (2) do not impose any greater restraint on the former employees than is reasonably necessary to protect plaintiff; and (3) "whether the degree of injury to the public is such loss of the service and skill of the former employees as to warrant nonenforcement of the covenant." Perry, 748 P.2d at 228 (citing Racine v. Bender, 252 P. 115 (Wash. 1927) and quoting Knight,

<u>Vale & Gregory v. McDaniel</u>, 680 P.2d 448. 452 (Wash. App. Ct. Div. 2 1984)).

With regard to the first prong of the test, defendants argue that the covenants are overbroad because they go beyond protecting plaintiff's business and goodwill; they "seek to prevent competition *per se*." According to defendants, plaintiff's definition of "confidential information" includes "virtually all information related to the temporary manual staffing industry," even that which is otherwise public information. The court is not convinced, however. Plaintiff's definition of "confidential information" does not include "virtually all information relating to the . . . industry." Rather, plaintiff's definition includes virtually all information relating to plaintiff's method of doing business and to plaintiff's customers. The court finds nothing overbroad about the definition, and defendants have not provided any example of public information it includes. Defendants also have failed to cite to Washington cases to support their argument.

Under Washington law, restrictive covenants may be used to protect an employer's investment in employee training, as well as an employer's confidential information, trade secrets, and customer relationships. See <u>ISC-Bunker Ramo</u>, 765 F. Supp. at 1336 (listing Washington cases). The court sees no difference between the interests Washington law allows plaintiff to protect and plaintiff's definition of "confidential information." Thus, the court finds that the restrictive covenants in the former employees' employment contracts are tailored to protect plaintiff's business and goodwill. Plaintiff has satisfied the first prong of the test.

The second prong of the test asks the court to determine whether the restrictive covenants impose a greater restraint on the former employees than is reasonably necessary to protect plaintiff. In conducting this inquiry, the court particularly looks at the reasonableness of the time

9

and geographic limitations, as well as the scope of the restrictive covenants, to ensure that the former employees are not unduly burdened. See Perry, 748 P.2d 224; cf. Armstrong v. Taco Time Int'l, Inc., 635 P.2d 1114, 1117 (Wash. Ct. App. Div. 3 1981). In so doing, the court finds that the one-year time restriction in the covenants is not overly burdensome on the former employees under Washington law. See Alexander & Alexander, Inc. v. Wohlman, 578 P.2d 530, 533 (Wash. Ct. App. Div. 1 1978) (upholding a two-year limitation in a restrictive covenant). Similarly, given the nature of the temporary manual labor industry, which relies on local employers to hire local individuals for labor, the court finds that the ten-mile geographical restriction is not unduly burdensome to the former employees. Washington courts have allowed cases to go forward based on a geographical restriction with a radius as large as thirty miles. See Goodyear Tire & Rubber Co. v. Whiteman Tire, 935 P.2d 628 (Wash. Ct. App. Div. 3 1997).

Defendants' argument that the restrictive covenants are overbroad because they limit the former employees from contacting any of plaintiff's customers (not just those customers with which the former employees had contact while employed by plaintiff) is likewise deficient. In Perry, the court upheld a restrictive covenant that prohibited solicitation of the former employer's clients, regardless of whether the former employee previously had contact with the client. 748 P.2d at 225. Thus, the court finds that the time and geographical limitations, as well as the scope of the restrictive covenants, are reasonable. The restraint on the former employees is not greater than necessary to protect plaintiff. If the former employees wish to work for a company similar to plaintiff, they need only refrain from working for one within a ten-mile radius, and even then only for one year. Likewise, the former employees can go about their business as usual—they are simply restricted from contacting plaintiff's customers for one year, whether or not they had

10

contact with those customers while employed by plaintiff. The court concludes that the restrictive covenants in the employment contracts pass the second prong of the reasonableness test.

The third prong of the test asks the court to consider "whether the degree of injury to the public is such loss of the service and skill of the former employees as to warrant nonenforcement of the covenant." Perry, 748 P.2d at 228 (quoting Knight, Vale & Gregory, 680 P.2d at 452). Defendants do not address this prong, and the court finds no reason to believe that any injury to the public resulting from the restrictive covenants warrants their nonenforcement. Thus, plaintiff has satisfied the third and final prong of the reasonableness test under Washington law, leading the court to conclude that the restrictive covenants are reasonable, and the employment contracts are therefore valid.

## II. Counts I, II, IV through VIII—Tort Claims[7]

Before the court can address defendants' arguments with respect to plaintiff's individual tort claims, the court must once again consider whether to apply the law of Washington or the law of Illinois to these counts.

### A. Choice of Law Analysis—Tort Claims

Returning to Illinois' choice of law analysis, the court must determine whether Washington or Illinois has the most significant relationship to the alleged torts or the parties named in Counts I, II, and IV through VIII. See Reid v. Norfolk & Western Ry. Co., 157 F.3d 1106, 1110 (7th Cir. 1998). The most significant relationship is determined by considering: (1) the place of the injury; (2) the place of the tortious conduct; (3) the domicile of the parties; and

---

[7] Counts III and IX-XIII, better classified as contract claims, will be discussed in the next section.

(4) the place where the relationship between the parties is centered. <u>Fredrick v. Simmons Airlines, Inc.</u>, 144 F.3d 500, 503-04 (7th Cir. 1998). Although each of these factors is considered, the place where the tort occurred typically governs. <u>Reid</u>, 157 F.3d at 1110. Thus, the court finds and the parties agree that Illinois law applies to plaintiff's tort claims.

## B. Count I—Staffing Network—Tortious Interference With Contractual Relations

To state a claim of tortious interference with contractual relations, plaintiff must allege that: (1) it had valid and enforceable contracts with the former employees; (2) Staffing Network was aware of the contracts; (3) Staffing Network intentionally and unjustifiably induced breaches of the contracts; (4) the contracts were breached; and (5) plaintiff suffered damages. <u>A-Abart Electric Supply, Inc. v. Emerson Electric Co.</u>, 956 F.2d 1399, 1405 (7th Cir. 1992).

Staffing Network moves to dismiss Count I on the basis that the employment contracts that the former employees had with plaintiff are invalid under Illinois law. As explained above, the court applied Washington law to the employment contracts and found them to be valid and enforceable against the former employees. Staffing Network also argues, though quite vaguely, that the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065/1 to 1065/9, preempts Count I to the extent the claim is based on misappropriation of trade secrets.[8] The court agrees with Staffing Network that, to the extent plaintiff relies on the use of trade secret information in Count I, it

---

[8] In a footnote within their argument seeking dismissal of Count VI as preempted by the ITSA, defendants state: "The same holds true of Counts I-IV, and VI-VIII." The court disregards this statement as it refers to Counts II and VIII, however, because the court finds no connection in those claims to defendants' alleged misappropriation of plaintiff's trade secrets, and defendants' vague preemption contention is therefore insufficient. With regard to Counts I, III, VI, and VII, the court addresses defendants' claims of ITSA preemption below. Finally, the court need not address defendants' preemption argument regarding Count IV because that claim is dismissed on other grounds.

should be dismissed.  See 765 ILCS 1065/8(a) (stating that the "Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret"); see also Chemetall GmBh v. Zr Energy, Inc., 2000 U.S. Dist. LEXIS 17928, *10, 2000 WL 1808568, *4 (N.D. Ill. Dec. 5, 2000) ("Under Section 8 of the ITSA, non-contract causes of action are preempted to the extent that they are based on a misappropriation of trade secrets.").  For example, plaintiff's allegation that Staffing Network caused the former employees to "disclose and use [plaintiff's] confidential and trade secret information" is clearly preempted by the ITSA.  On the other hand, plaintiff's allegations that Staffing Network employed the former employees "within ten miles of the location of their former offices [with plaintiff]" and "caused them to solicit customers of [plaintiff]" are not preempted to the extent those allegations do not rely on misappropriation of trade secrets.

Thus, defendants' motion to dismiss Count I is granted without prejudice.  Plaintiff is given leave to file an amended complaint alleging a claim of tortious interference with contractual relations that does not rely upon defendants' alleged misappropriation of trade secrets.

### C. Count II—Staffing Network—Tortious Interference With Prospective Business Relations

To state a claim for tortious interference with prospective business relations, plaintiff must allege that:  (1) it had a valid business relationship or expectation of entering into a valid business relationship; (2) Staffing Network's knew of that relationship or expectancy; (3) Staffing Network intentionally interfered, inducing or causing a breach or termination of the relationship or expectancy; and (4) plaintiff suffered damages as a result.  McIntosh v. Magna Systems, Inc., 539 F. Supp. 1185, 1192 (N.D. Ill. 1982).

13

Staffing Network argues that plaintiff has failed to allege the first, third, and fourth elements of this tort. According to Staffing Network, plaintiff must allege "specific customers for which it had this 'reasonable expectation'" of gaining future business and "specific facts establishing this expectation." Staffing Network is mistaken. As Judge Kennelly recently ruled: "All that is necessary is that [plaintiff] allege a reasonable expectancy to enter into future business relations." Gorgonz Group, Inc. v. Marmon Holdings, Inc., 2001 U.S. Dist. LEXIS 1045, *7, 2001 WL 103406, *2 (N.D. Ill. Jan. 26, 2001). Even so, the complaint details three customers of plaintiff allegedly solicited by the former employees on behalf of Staffing Network. According to plaintiff, it has "ongoing relationships with its customers and prospective customers" that result from "substantial investment[s] of time, energy, and resources," and thus, plaintiff has a "reasonable expectation of entering long-term, successful business relationships with its customers and prospective customers." The court finds this sufficient to satisfy the pleading requirement for the first element of the claim.

Likewise, plaintiff sufficiently has pleaded that Staffing Network intentionally interfered with plaintiff's prospective business relationships, inducing or causing a breach or termination of the relationship or expectancy through the following allegations in the complaint: "Staffing Network has purposefully interfered with [plaintiff's] prospective business relations through its employ of [the former employees] by . . . soliciting [plaintiff's] customers and prospective customers . . .; [and by] making disparaging, false and misleading factual assertions about [plaintiff] . . . ."

Finally, for the fourth element, plaintiff alleges that Staffing Network caused plaintiff to suffer numerous losses, including "loss of customer goodwill," "loss of competitive position,"

"loss of future business," and "threatened loss of . . . accounts." See L&W/Lindco Prods., Inc., v. Pure Asphalt Co., 979 F.Supp. 632, 640 (N.D. Ill. 1997) (noting that the plaintiff alleged "loss of competitive advantage," which was sufficient for pleading purposes). Thus, plaintiff sufficiently has alleged that it suffered damages as a result of Staffing Network's actions. Based on the above, the court finds that plaintiff sufficiently has alleged its claim of tortious interference with prospective business relations.

Staffing Network next raises the affirmative defense of competitor's privilege. In order for this defense to apply in the instant case, however, Staffing Network will have to show that it did not "employ wrongful means" and that its actions did not "create or continue in an unlawful restraint of trade." A-Abart Electric Supply, 956 F.2d at 1405. According to plaintiff, Staffing Network's means were wrongful and may have created an unlawful restraint of trade; plaintiff alleges that Staffing Network performed several illegal acts through the former employees, including attempting to steal plaintiff's customer files and to benefit from plaintiff's other confidential information. Assuming these allegations are true, as the court must at this stage of the litigation, Count II survives defendants' motion despite Staffing Network's potential defense.

## D. Count IV—Staffing Network—Aiding and Abetting Breach of Fiduciary Duty

Staffing Network correctly argues that Illinois does not recognize the tort of aiding and abetting breach of fiduciary duty. See, e.g., Koutsoubos v. Casanave, 816 F.Supp. 472, 475 (N.D. Ill. 1993). Therefore, Count IV is dismissed.

## E. Count V—Defendants—Misappropriation of Trade Secrets

To state a claim under ITSA, plaintiff must allege that the information at issue is: "(i) secret (that is, not generally known in the industry), (ii) misappropriated (that is, stolen from it

15

rather than developed independently or obtained from a third source), and (iii) used in . . .

defendants' business." Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263,

1265-66 (7th Cir. 1992) (citing statutory definition of trade secret);[9] see also Leggett & Platt, Inc.

v. Hickory Springs Mfg. Co., 132 F. Supp. 2d 643, 649-50 (N.D. Ill. 2001).

Defendants argue that the trade secrets that plaintiff alleges defendants misappropriated

were merely broad areas of business information, and therefore, plaintiff does not state a cause of

action under the ITSA. Plaintiff replies that it alleged that defendants misappropriated numerous

types of information that constituted trade secret information, thereby meeting notice pleading

requirements.

The court finds that plaintiff has adequately pleaded that defendants[10] violated the ITSA.

Plaintiff alleges that Staffing Network and the former employees stole information from

plaintiff—information that plaintiff claims it kept secret through the restrictive covenants in the

---

[9] The ITSA defines a trade secret as:

> [I]nformation, including but not limited to, technical or non-technical data, a
> formula, pattern, compilation, program, device, method, technique, drawing,
> process, financial data, or list of actual or potential customers or suppliers, that:
> (1) is sufficiently secret to derive economic value, actual or potential, from not being
> generally known to other persons who can obtain economic value from its disclosure or
> use; and (2) is the subject of efforts that are reasonable under the circumstances to
> maintain its secrecy or confidentiality.

765 ILCS 1065/2.

[10] Defendants also argue that Count V must be dismissed as to those defendants who are not
specifically alleged to have engaged in any wrongful conduct. The complaint alleges a summary
of activities that amount to misappropriation of trade secrets. Moreover, as Count V states, "each
of the named [d]efendants has misappropriated [plaintiff's] confidential and trade secret
information." Taking that allegation as true, as the court must, the court finds that plaintiff has
stated a claim sufficient for notice pleading requirements against Staffing Network as well as
each of the former employees.

16

employment contracts, among other means—and used the information in the recruitment of other employees of plaintiff and in the solicitation of plaintiff's customers to the benefit of Staffing Network. The information plaintiff accuses defendants of misappropriating includes:

> [U]nique, confidential business practices, models and data; customer lists; the names of key individuals within the organization of customers and potential customers . . . ; customer[s'] habits[,] preferences[,] special needs[,] and requirements . . . ; recruiting [and] training methods; site selection [and] compensation models; dispatch office layouts; pricing data; computer software and hardware; formats; manuals; methods and techniques of operation and training; . . . personnel files . . . [;] and marketing strategies.

Thus, plaintiff has adequately pleaded misappropriation of trade secrets under ITSA, and Count V survives the motion to dismiss.[11]

### F. Count VI—Staffing Network—Unfair Competition

Stating a common law claim for unfair competition is not quite as simple. As the Seventh Circuit has stated, "the law of unfair competition . . . is elusive; its elements escape definition." Wilson v. Electro Marine Sys., Inc., 915 F.2d 1110, 1118 (7th Cir. 1990). Generally, plaintiff must allege that defendants have misappropriated plaintiff's "labors and expenditures;" that Staffing Network has reaped where plaintiff has sown. Lynch Ford, Inc. v. Ford Motor Co., 957 F. Supp. 142, 1997 U.S. Dist. LEXIS 2009 (N.D. Ill. 1997) (citing Wilson, 915 F.2d 1118-19)).

Staffing Network argues that the ITSA preempts plaintiff's claim of unfair competition, and plaintiff fails to respond directly to this argument. Once again the court agrees with Staffing Network that, to the extent plaintiff relies on the use of trade secret information in Count VI, that

---

[11] Plaintiff will have to provide a more specific explanation of its trade secrets to survive a motion for summary judgment, however. See Thermodyne Food Serv. Prod., Inc. v. McDonald's Corp., 940 F.Supp. 1300 (N.D. Ill. 1996).

count should be dismissed.  See 765 ILCS 1065/8(a); Chemetall GmBh, 2000 U.S. Dist. LEXIS at *10, 2000 WL at *4.  For example, plaintiff's allegation that "Staffing Network misappropriated and used [plaintiff's] confidential information and trade secrets to solicit [plaintiff's] customers and potential customers" is clearly preempted by the ITSA.  On the other hand, plaintiff's allegation that "Staffing Network wrongfully has sought to create and/or expand its . . . business by recruiting [plaintiff's] management employees *en masse*, including with the assistance of [plaintiff's] employees before they even resign" is not preempted to the extent that it does not rely on misappropriation of trade secrets.

Thus, defendants' motion to dismiss Count VI is granted without prejudice.  Plaintiff is given leave to file an amended complaint alleging a claim of unfair competition that does not rely upon misappropriation of trade secrets.

### G. Count VII—Staffing Network—Tortious Interference with Employment Relationship

The court need not delve deep into Count VII to find plaintiff's pleading weaknesses.  In this claim, plaintiff alleges that Staffing Network "converted [plaintiff's] confidential information to create commission structure and other policies identical to the policies of [plaintiff]" and that Staffing Network "willfully, intentionally, and maliciously induced [the former employees] to terminate their employment with [plaintiff] and become employees of Staffing Network . . . . with the intent to injure [plaintiff]."

To the extent this claim makes the exact same allegations as Count I (plaintiff's claim against Staffing Network for tortious interference with contractual relations), it is redundant and thus dismissed.  Additionally, to the extent Count VII alleges the misappropriation of plaintiff's trade secrets, it is preempted by the ITSA.  See 765 ILCS 1065/8(a); Chemetall GmBh, 2000

18

U.S. Dist. LEXIS at *10, 2000 WL at *4. Thus, Count VII is dismissed without prejudice. Plaintiff is given leave to file an amended complaint alleging a claim of tortious interference with employment relationship, but only to the extent that the claim is not duplicative of other counts and does not involve the misuse of plaintiff's trade secrets.

### H. Count VIII—Staffing Network—Violation of the Uniform Deceptive Trade Practices Act

To state a claim under the Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 to 510/7, plaintiff must allege that defendants publicized untrue or misleading statements that disparaged plaintiff's goods or services. See Olin Hunt Specialty Prods., Inc. v. Advanced Delivery Chem. System, 1990 U.S. Dist. LEXIS 19146, *4, 1990 WL 304261, *2 (N.D. Ill. Oct. 31, 1990). Accordingly, plaintiff alleges that "Staffing Network, through its agents, has violated the [UDTPA] by willfully making false and derogatory statements of fact to [plaintiff's] customers, prospective customers, and others relating to [plaintiff's] business and/or goods and services." As an example, plaintiff refers to Patton's alleged statements to plaintiff's customers that plaintiff is operating illegally and will be shut down by the City of Chicago.

Staffing Network argues that Patton's alleged statements do not disparage the goods or services of plaintiff and that plaintiff cannot recover under the UDTPA because plaintiff has "abandoned its claim for injunctive relief—the only type of relief authorized by the [UDTPA]." Plaintiff responds that Patton's accusations go "to the heart of the services" it provides and that it "still may seek preliminary or permanent injunctive relief at the conclusion of the case or prior to that time in accordance with the relevant rules of procedure." Based on plaintiff's response, the court finds that Count VIII adequately states a claim for violation of the UDTPA. Defendants' motion to dismiss Count VIII is denied.

19

## III. Counts III and IX through XIII—Contract Claims

The court now turns to plaintiff's contract claims against defendants. Before the court can address defendants' arguments seeking dismissal of these individual claims, the court must yet again perform a choice of law analysis.

### A. Choice of Law Analysis—Contract Claims

Little attention is paid by either party to which state's law should apply to plaintiff's contract claims against defendants. As explained above, the employment contracts provide that they "shall be governed and construed in accordance with the laws of the State of Washington." Despite this, both parties rely on Illinois law in arguing for and against dismissal of plaintiff's claims sounding in contract. Thus, the court regards the parties as having stipulated to the application of Illinois law to the remaining counts.

### B. Count III—The former employees—Breach of Fiduciary Duty[12]

To state a claim for breach of fiduciary duty, plaintiff must allege that: (1) a fiduciary duty existed between plaintiff and the former employees; (2) the duty was breached by the former employees; and (3) the breach proximately caused the injury of which plaintiff complains. Neade v. Portes, 739 N.E.2d 496, 502 (Ill. 2000) (citations omitted). Accordingly, plaintiff alleges that the former employees "owed [plaintiff] the duty of loyalty and certain other fiduciary duties," apparently because the former employees "stand in a confidential relationship regarding [plaintiff's] trade secrets and other confidential information," and that, therefore, the former

---

[12] Although not really a contract claim, breach of fiduciary duty is more accurately grouped with plaintiff's contract claims than its tort claims. "An action for breach of fiduciary duty is not a tort; rather, it is controlled by the substantive laws of agency, contract and equity." Capitol Indem. Corp. v. Stewart Smith Intermediaries, 593 N.E.2d 872, 876 (Ill. App. Ct. 1st Dist. 1992) (citing Kinzer v. City of Chicago 539 N.E.2d 1216, 1220 (Ill. 1989)).

employees "each had a duty not to recruit other [of plaintiff's] employees for a competitor of [plaintiff]."[13]

Defendants argue that, to the extent that the breach of fiduciary duty claim relies on actions taken by the former employees once they no longer worked for plaintiff, the claim should be dismissed because a fiduciary duty ends with the termination of the employment relationship. The court disagrees. As the Seventh Circuit explained in <u>Composite Marine Propellers</u>, 962 F.2d at 1265, a fiduciary duty rests on the validity of the underlying contract. While termination of employment typically ends a fiduciary duty under Illinois law, this is not so where an employment contract contains a valid restrictive covenant. <u>See</u> <u>Jostens, Inc. v. Kauffman</u>, 842 F.Supp. 352, 354 (C.D. Ill. 1994) (quoting <u>Composite Marine</u> and allowing a claim of post-employment fiduciary duty to stand). Hence, defendants' motion to dismiss Count III is denied on that ground.

Defendants also argue that Count III should be dismissed because the ITSA preempts the breach of fiduciary duty claim against the former employees. According to defendants, this is another example of plaintiff making a claim that relies on the misappropriation of trade secrets. Plaintiff responds that the claim is not based on misappropriation of trade secrets at all, but rather results from the former employees' attempts to recruit other employees of plaintiff. The court agrees. Although plaintiff alleges that the former employees "stand in a confidential relationship

---

[13] As with Count V, defendants argue that Count III must be dismissed as to those defendants who are not specifically alleged to have breached his fiduciary duty. Similar to Count V, in the complaint plaintiff does claim acts of breach of fiduciary duty against each of the defendants. Moreover, in Count III, plaintiff specifically alleges that "each [of the former employees] breached their fiduciary duties owed to" plaintiff. This allegation is sufficient for notice pleading requirements.

regarding [plaintiff's] trade secrets and other confidential information," it is clear that plaintiff is using the former employees' access to that information solely to establish their fiduciary duty to defendants.[14] The meat of plaintiff's allegation in this claim is that the former employees breached their fiduciary duty to plaintiff by recruiting other of plaintiff's employees to work for Staffing Network. See, e.g., Anderson v. Burton Assocs., Ltd., 578 N.E.2d 199, 202 (Ill. App. Ct. 1st Dist. 1991) (holding that recruiting for another company while still employed by employer is a breach of fiduciary duty to employer). Further, as explained above, this duty survives for the duration of the restrictive covenants in the former employees' employment contracts. Thus, defendants' preemption argument fails and their motion to dismiss Count III is denied.

## C. Counts IX-XIII—The former employees (Individually)—Breach of Contract

Finally, Staffing Network argues that the court should dismiss the breach of contract claims against the former employees because the restrictive covenants are overbroad and

---

[14] Indeed, plaintiff's complaint alleges that each of the former employees held management-level positions in plaintiff's company prior to leaving to work at Staffing Network. As Illinois courts have explained:

> Corporate officers owe a fiduciary duty of loyalty to their corporate employer not to actively exploit their positions within the corporation for their own personal benefit or hinder the ability of a corporation to continue the business for which it was developed . . . . But former general employees may compete with their former employers absent a contractual restrictive covenant, provided there was no demonstrable business activity before termination of employment.

Everen Secs. v. A.G. Edwards & Sons, 719 N.E.2d 312, 318 (Ill. App. Ct. 3d Dist. 1999) (citing Dowd & Dowd, Ltd. v. Gleason, 672 N.E.2d 854 (Ill. App. Ct. 1st Dist. 1996); Dowell v. Bitner, 652 N.E.2d 1372 (Ill. App. Ct. 4th Dist. 1995)).

unenforceable under Illinois law. As explained above, the court has determined that the restrictive covenants are not overbroad under Washington law. Therefore, Counts IX-XIII survive the motion to dismiss.

## CONCLUSION

The court denies defendants' motion to dismiss Counts II, III, V, VIII, IX, X, XI, XII, and XIII. The court grants defendants' motion to dismiss Count IV with prejudice. The court grants defendants' motion to dismiss Counts I, VI, and VII without prejudice; plaintiff is given leave to file an amended complaint to replead those counts in conformity with this decision on or before June 21, 2001. Defendants shall respond to the amended complaint on or before July 12, 2001. The status report set for June 6, 2001, is continued to July 18, 2001, at 9:00 a.m.

**ENTER:**    **May 31, 2001.**

**Robert W. Gettleman**
**United States District Judge**